UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| Sowmini Oomman, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> Dickson Medical Associates. <br><br> Defendant. | Case No. <br><br><br><br> DEMAND FOR JURY TRIAL |

COMPLAINT

VENUE AND JURISDICTION

1. This action involves a breach of contract claim where the offer was made from the State of Tennessee, and accepted in the State of Michigan.

2. Plaintiff, Dr. Sowmini Oomman is a licensed neurologist and board certified sleep specialist who currently resides in Franklin, Tennessee.

3. Dickson Medical Associates, P.C. is a professional corporation that was incorporated in the State of Tennessee, and the principle place of business is Dickson, Tennessee.

4. Pursuant to 28 USC §1332, diversity jurisdiction is appropriate as the offer was made by Dickson Medical Associates located in the State of Tennessee to a physician located in the State of Michigan.

5. For the purposes of diversity jurisdiction, the offer was accepted by a physician in the state of Michigan.

6. The amount in controversy exceeds $75,000 (seventy five thousand dollars) and is set at $1,482,000 (one million, four hundred and eighty two thousand dollars).

7. Pursuant to 28 U.S.C. 1391 venue is appropriate in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

8. Supplemental Jurisdiction is appropriate over the State claims pursuant to 28 USC §1367.

## CONTRACT

9. Dickson Medical Associates (also referred to as DMA) operate a sleep clinic and laboratory in Dickson Tennessee.

10. Said sleep laboratory is accredited by the American Academy of Sleep Medicine.

11. Said accreditation sets a higher standard and is required for many insurance reimbursements including Medicare.

12. Said accreditation is an instrumental part of the clinic and laboratory and was used as a carrot for solicitation of a medical director.

13. Said accreditation requires a full time medical director to be responsible for all operations within the laboratory to include supervision over all personnel, the sleep studies, training, and quality control.

14. DMA solicited a medical director for said accredited sleep clinic.

15. Said offer included "AASM accredited sleep Center".

16. In said solicitation, DMA offered an independent and autonomous sleep laboratory to Dr. Oomman.

17. Said offer also indicates Dr. Oomman would ultimately be completely responsible for the

profit and/or loss of said clinic.

18. Said offer includes Dr. Oomman would be included in the "means and manner in which those duties shall be performed".

19. The contract is in the possession of all parties and the terms that were unclear in the offer or not understood by Dr. Oomman were clarified in concurrent emails.

20. A form employment contract was provided by DMA, but does not include any outline the duties for the position of medical director. Said contract is in the possession of all parties.

21. A form contract was provided and does not require the medical director be financially responsible for non-employee, outside physicians.

22. A form contract was provided and does not require the medical director to provide sleep laboratory services to non-employee, outside physicians.

23. Inherent to the contract and the offer and the acceptance was this laboratory was accredited and therefore abides by the rules and regulations of the American Academy of Sleep Medicine.

24. Dr. Oomman accepted the form contract on or about January 4, 2016 when she in the State of Michigan.

25. In consideration of the offer and acceptance, Dr. Oomman relocated to Tennessee and began her employment with DMA. She was paid according to the contract terms.

FIRST CAUSE OF ACTION

BREACH OF CONTRACT

26. Plaintiff incorporates paragraphs 1 – 25 herein as evidence of a valid contract.

27. After Dr. Oomman began her employment, Dickson Medical Associates materially breached the contract when they failed to remove the prior medical director (Dr. Mohammad Alsoub) of the Sleep Laboratory.

28. DMA materially breached the contract when they failed to remove the prior director from the letterhead after Dr. Oomman became medical director.

29. DMA materially breached the contract when they made material decisions about the prior medical director's accessibility to the laboratory without consulting Dr. Oomman pursuant to Section 2.(ii) which states, "[E]mployer shall have the authority,   2(ii) *in agreement with the physician* determine the means and manner by which those duties shall be performed". (emphasis added)

30. DMA materially breached the contract when they forced losses upon the laboratory without consulting Dr. Oomman, the medical director.

31. DMA materially breached the contract when the prior medical director remained on site

32. DMA materially breached the contract when the prior medical director remained on the letterhead as the sleep specialist.

33. DMA materially breached the contract when the prior medical director continued ordering sleep studies at the expense of Dr. Oomman.

34. DMA materially breached the contract when the prior medical director failed to comply with AASM guidelines, and interpreting studies that belonged to the clinic.

35. DMA materially breached the contract when they subjected Dr. Oomman to medical malpractice, accreditation problems, and a skewed profit/loss analysis (where the prior medical director received interpretation fees, but incurred no lab costs).

36. DMA materially breached the contract when they made material decisions in violation of

Section 2(ii) when they allowed an outside, non-employee physician to continue using the sleep laboratory via "planning committee" meetings, where the sleep director was not informed, invited, or included in any way.

37. DMA materially breached the contract when the planning committee determination of sleep laboratory personnel is in violation of the AASM guidelines for accreditation.

38. DMA materially breached the contract when failing to abide by AASM rules when they failed to identify the correct medical director.

39. DMA materially breached the contract when they identified two medical directors instead of one in violation of the AASM regulations.

40. DMA materially breached the contract when they interfered with the "direct and ongoing oversight of testing", when allowing a non-employee, outside physician to use the sleep lab.

41. DMA materially breached the contract when they regularly interfered with the medical director responsibility for accreditation in the few short months having multiple meetings between the shareholders about the sleep lab WITHOUT including the medical director.

42. One such meeting occurred when the shareholders decided sua sponte to allow Dr. Alsoub to continue his activities at the sleep clinic without consulting the one responsible.

43. DMA materially breached the contract when they subversively allowing the former medical director to continue with business as usual thereby breaching their offer of a medical director of an accredited sleep lab.

44. As a result of the material breaches, Plaintiff invoked section 5 of the contract and terminated same for cause per section 5.

45. Said material breaches caused monetary damages in the form of lost income and lost profits estimated by DMA at the rate of $494,000 per year in a contract set for three years or $1,482,000 (one million, four hundred and eighty two thousand dollars).

46. Said material breaches caused loss of reputation, and such other losses as deemed to flow from the breach by a jury of Plaintiff's peers.

SECOND CAUSE OF ACTION

INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

47. Plaintiff incorporates herein by reference the prior paragraphs of this complaint.

48. Plaintiff had an existing business relationship with specific third parties including the American Academy of Sleep Medicine.

49. Plaintiff had an existing business relationship with specific third parties including patients and insurance companies to include Medicare wherein she was specifically made responsible for the profit and/or losses of the sleep lab.

50. Plaintiff had a prospective business relationship with Medicare who either does or intends that all sleep lab to be accredited before they reimburse for Medicare patients.

51. DMA had full knowledge of these relationships and Plaintiff's business dealings with others in that DMA provided an accounting or predicted spread sheet for income and had contracts outlining same in their possession.

52. Said spreadsheets outlined in paragraph 45 were an integral part of the offer that was accepted and said relationships were an integral part of the acceptance.

53. DMA intended to breach the business relationship of the Plaintiff and others identified, when they jeopardized the accreditation of the sleep laboratory in subversive meetings where Plaintiff was not included in violation of Section 2(ii).

54. DMA intended to breach the business relationships of the Plaintiff when it was decided that a non-employee, non-paying outsider could use the medical facility without the knowledge of the medical director.

55. Defendant's improper motives and means are evidence by the subversive nature of said meetings.

56. As a result of the interference, Plaintiff resigned to preserve and protect her licensure and reputation.

57. As a result of the interference Plaintiff suffered loss of monetary damages and other damages as to be determined by the appropriate tribunal.

RESPECTFULLY SUBMITTED:     s/ Constance Mann

_____
Constance Mann
The Law Offices of Constance Mann
TN BPR # 014616
CA BPR # 16564

1107 Battlewood Street
Franklin, TN 37069
(615) 724-1800
cmannlaw@msn.com
Attorney for Plaintiff, Thomas Gilbert

Bond Statement

COST BOND

I, Constance Mann as Principal(s) and as Surety, am held and firmly bound unto the Federal District Court of the Middle District of Tennessee, for the payment of all costs awarded against the principal. To that end, we bind ourselves, our heirs, executors and administrators.

The Principal(s) is/are commencing legal proceeding in the Federal District Court of the Middle District of Tennessee. If the Principal(s) shall pay all costs which are adjudged against them then this obligation is void. If the Principal(s) fail to pay then the surety shall undertake to pay all costs adjudged against the Principal(s).

\_\_\_\_\_s/Constance Mann_____